## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 18 2016, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy L. Seal
Seymour, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| In the Termination of the Parent-Child Relationship of Ja.V. (Minor Child) and J.V. (Father), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | July 18, 2016 <br><br> Court of Appeals Case No. 36A04-1603-JT-534 <br><br> Appeal from the Jackson Superior Court <br><br> The Honorable Bruce A. MacTavish, Judge. <br><br> Trial Court Cause No. 36D02-1510-JT-14 |

**Mathias, Judge.**

[1] J.V. ("Father") appeals the involuntary termination of his parental rights to his minor son ("Child"). Father presents one issue, which we restate as whether the State presented sufficient evidence to support the trial court's termination order.

[2] We affirm.

## Facts and Procedural History

[3] Child was born on December 18, 2013, to Father and H.G. ("Mother").[1] On May 19, 2014, Father and Mother were arrested for drug possession and neglect of a dependent charges but were released on bond a few days later.[2] Ten days after the previous arrest, Mother and Father were again arrested at a local hotel where they were living on charges of residential burglary, possession of stolen property, theft, maintaining a common nuisance, possession of marijuana, and neglect of a dependent charges.[3] That same day, the Department of Child Services ("DCS") removed five-month-old Child and placed him in a foster home.

[4] The next day, DCS filed a petition alleging that Child was a Child in Need of Services ("CHINS"). On August 7, 2014, the trial court held a hearing at which Father admitted that Child was a CHINS and that he struggled with substance abuse issues. Twenty days later, the trial court ordered Father to participate in

---

[1] Mother consented to Child's adoption and accordingly does not participate in this appeal.

[2] At the time of Mother and Father's first arrest, Child was staying with a family friend.

[3] Father has remained incarcerated since his arrest on May 29, 2014.

reunification services. These services included: maintaining contact with the DCS family case manager, enrolling in programs recommended by the family case manager, refraining from use of illegal substances, submitting to random drug screens, and completing a parenting assessment and its accompanying recommendations.

[5] The trial court held periodic review hearings on November 19, 2014, February 11, 2014, and May 20, 2015, and determined that Father was not complying with Child's case plan while being incarcerated. On August 5, 2015, the trial court held a permanency hearing and changed the plan from reunification to termination of parental rights and adoption. DCS filed its termination of parental rights petition on October 19, 2015.

[6] Father was ordered to serve five years in the Department of Correction on December 18, 2015, after pleading guilty to two Class D felony theft charges, Class A misdemeanor possession of marijuana, and Class D felony neglect of a dependent. Father also stipulated that he had been convicted of theft of property worth more than $50 and less than $500, burglary of vehicles, and had two or more previous convictions within the last ten years in Texas. Appellant's App. p. 49. Further, Father indicated that he has three other children living in Texas with their grandparents. Tr. p. 52.

[7] On February 3, 2016[4], the trial court held an evidentiary hearing on DCS's termination petition. Family case manager, Kay Char Perkinson ("Perkinson") worked with Father from the time he was arrested until November 2015. Perkinson explained that DCS was unable to provide Father with services while he was in jail, but she suggested that he participate in an Alcoholics Anonymous program, and work on obtaining his GED due to his substance abuse issues. While Father initially expressed an interest in these services, he eventually told Perkinson that he was not going to participate in the recommended services. Ultimately, Father never participated in services when he was in jail. Yet, after Father was transferred to the Department of Correction, he began participating in an education program to obtain his GED and started attending church services.

[8] Court appointed special advocate ("CASA") Sue Fechter ("Fechter") stated that Child is doing great in his foster home and considers his foster parents "mom" and "dad." Tr. p. 37. Fechter expressed that Child has been with his foster parents for two years, that they are meeting his needs, and that it would be in Child's best interests to be adopted by his foster family. The trial court then concluded that DCS had proven its case by clear and convincing evidence and terminated Father's parental rights to Child. Father now appeals.

---

[4] The transcript reflects that the hearing occurred on February 3, 2015, but based on the sequence of events presented in the record, this is apparently a clerical error.

## Standard of Review

[9] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## Termination of Parental Rights

[10] "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following requirements:

>   (2) The petition must allege:

>>   (B) that one (1) of the following is true:

>>>   (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>>>   (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>>>   (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

>>   (C) that termination is in the best interests of the child; and

>>   (D) that there is a satisfactory plan for the care and treatment of the child.

However, Indiana Code section 4(b)(2)(B) is written in the disjunctive; therefore, the trial court is required to find that only one prong of subsection (2)(B) has been established by clear and convincing evidence. *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). DCS must prove "each and every element" by clear and convincing evidence. *G.Y.,* 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need not establish that the

continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

## I. Conditions that Led to Removal

[13] Father argues that DCS failed to present sufficient evidence that he would be unable to remedy the conditions and situation that led to Child's removal. Specifically, Father argues that no evidence was presented about Father's parenting skills and housing and employment plan after he is released from prison. He contends that without this evidence, the court cannot conclude that he would be unable to parent Child in the future.

[14] When making a determination as to whether a reasonable probability exists that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). The trial court is also required to consider the parent's habitual patterns of conduct in order to determine the probability of future neglect or deprivation of the child. *Id.* at

1157. The trial court may consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* The trial court may consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. *Id.*

[15] In this situation, DCS initiated the CHINS proceeding after Mother and Father were arrested on two separate occasions for charges relating to theft, drug possession, and neglect of Child. At the time of the termination hearing, Father was still incarcerated and not expected to be released until December 2016[5]. Father also stipulated that he had a prior criminal history in Texas. Further, DCS presented evidence that while Father was in jail he refused to participate in the services that family case manager Perkinson recommended. The trial court ordered Father to participate in these recommended services after the August 7, 2014 dispositional hearing. Although he conceded that he did not participate in services in jail, Father testified that he started attending church and working to obtain his GED after being moved to the Department of Correction. However, this occurred after the trial court changed the permanency plan from reunification to adoption.

---

[5] Based on Father working to obtain his GED, he explained that his release date could be changed to June 2016.

[16] We acknowledge that no evidence was presented on Father's future ability to parent Child. However, when making a determination, the trial court looks at a parent's fitness to care for Child at the time of the termination hearing and assesses changed circumstances. *See A.D.S.*, 987 N.E.2d at 1156-57. At the time of the termination hearing, Father was still incarcerated, had not participated in recommended services between November 2014 and August 2015 in jail, but had started working to obtain his GED after being moved to the Department of Correction. The trial court also considered Father's past criminal history and that Father has three other children in Texas, who are being raised by their grandparents.

[17] Based on these facts and circumstances, the trial court did not clearly err when it concluded that the conditions that led to Child's removal from Father would not be remedied. It is within the trial court's discretion to consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* At 1157. DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. Accordingly, Father's argument is a request that we reweigh the evidence, which is not our role as an appellate court.

## II. Best Interests of the Child

[18] Father also challenges the court's determination that termination of his parental rights was in Child's best interests. When determining what is in the best

interests of a child, the trial court must look beyond the factors identified by DCS and look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158. In doing so, the court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* A recommendation by the case manager or child advocate to terminate parental rights is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59. Permanency is a central concern in determining the best interests of a child. *Id.* at 1159.

[19] Child was five months old when he was removed from Mother and Father's care after they were arrested. Family case manager Perkinson testified that termination of Father's parental rights is in Child's best interests. She indicated that continuing the relationship would pose a threat to Child's well being because he is well bonded with his foster family and Child has had no contact with Father while he has been incarcerated. Further, CASA Fechter explained that Child is doing well in his foster home, has expanded his vocabulary, and calls the parents "mom" and "dad." Tr. pp. 37-38. Fechter emphasized that Child's needs are being met and that it is in Child's best interest for him to be adopted by his foster parents. Based on the recommendations from Perkinson and Fechter, we cannot conclude that the trial court erred in determining that termination of Father's parental rights to Child was in the best interests of Child.

## Conclusion

This is a sad situation where Father desires to establish a relationship with Child. However, Father has a past criminal history, is currently incarcerated, and continues to struggle with substance abuse. Because of Father's incarceration and absence in Child's life, Child believes his foster parents to be his family and is well bonded with them. Applying our highly deferential standard of review in this situation, we cannot conclude that the trial court's decision to terminate Father's parental rights to Child was clearly erroneous.

Affirmed.

Vaidik, C.J., and Barnes, J., concur.